# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE JONES, | CASE NO. 1:08-cv-01383-LJO-GBC PC |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS, et al., | (ECF No. 14) |
| Defendants. | THIRTY-DAY DEADLINE |

**I.** **Screening Requirement**

Plaintiff Christine Jones ("Plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently pending before the Court is the second amended complaint, filed March 2, 2011.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)).

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II.     Complaint Allegations

Plaintiff brings this action against Defendants Kenneth Clark, James Tilton, Couch, and two unknown police officers ("Does") alleging that she was arrested and her property was searched in violation of the Fourth and Fourteenth Amendments. Additionally prison officials failed to provide her with a written notice of termination of the visit in violation of Cal. Code of Regs. tit 15, § 3179.

On September 14, 2007, Plaintiff, a disabled adult, went to Corcoran State Prison to visit her husband, an inmate. (Sec. Amend. Compl. pp. 1-2, ECF No. 14.) After Plaintiff arrived at the prison she signed in and waited to complete the visitor intake process. Plaintiff was approached by Defendants Couch and Does and Defendant Couch told Plaintiff to come with him. Defendant Couch took Plaintiff to a small office and went behind the desk, while the two unknown officers stood. Defendant Couch began to question Plaintiff and told her that he was going to take her property to run a trace search, informed her that he was getting a warrant for a strip search, and asked her if she would sign a form to consent to a strip search. Plaintiff said she would sign the form. (Id., p. 9.)

Defendant Couch then took Plaintiff's property and placed her in a small utility room. She

was told to stand in the middle of the room and if she attempted to discard any contraband the Doe Defendants would use force to stop her. The two officers guarded Plaintiff as she stood in the middle of the room. After approximately fifteen minutes, Defendant Couch returned and began asking Plaintiff questions. Plaintiff told Defendant Couch that she wanted an attorney . The two unknown officers left. Defendant Couch returned her property and told her that she would not be allowed to visit her husband and could leave the facility. (Id.)

<u>First Cause of Action - Fourth Amendment</u>

Plaintiff was arrested, placed in custody, and searched by Defendant Couch and placed under guard of Defendant Does without a hearing pursuant to Cal. Code Regs. tit. 15, § 3179, violating her right to be free from unreasonable search and seizure.

<u>Second Cause of Action - Due Process</u>

Defendant Couch did not provide Plaintiff with a hearing, pursuant to Cal. Code Regs. tit 15, § 3179 in violation of Due Process. Defendants Kenneth Clark and James Tilton failed to train Defendant Couch and this was the moving force behind the constitutional violation.

<u>Third Cause of Action - Intentional Infliction of Emotional Distress</u>

The false arrest and false imprisonment by Defendants aggravated Plaintiff's pre-existing mental illness causing her to suffer severe emotional distress and mental duress.

**III.  Discussion**

    **A.  Fourth Amendment**

        **1.  Search of Plaintiff's Property**

Plaintiff alleges that her property was searched without a warrant in violation of the Fourth Amendment. A person entering a penal institution would have a lesser expectation of privacy under the Fourth Amendment. <u>Spear v. Sowders</u>, 71 F.3d 626, 629-30. (6th Cir. 1995) ("visitors can be subjected to some searches, . . . merely as a condition of visitation, absent any suspicion"); <u>see also</u> <u>Wood v. Clemons</u>, 89 F.3d 922, 928 (1st Cir. 1996); <u>Ybarra v. Nevada Bd. Of State Prison Com'rs</u>, 520 F.Supp 1000, 1003 (D.Nev. 1981). Searches conducted as a condition of entering a sensitive public facility can be exempted from the warrant requirement. <u>McMorris v. Alioto</u>, 567 F.2d 897, 898-99 (9th Cir. 1978). The need for security at a prison is sufficiently substantial to justify some

3

type of screening process for visitors as reasonable under the Fourth Amendment. 5 Wayne R. LaFave, Search and Seizure § 10.7(b) (4th ed. 2004). See also Bell v. Wolfish, 441 U.S. 529, 559 (1979) (upholding visual body cavity search of prisoners after contact visits with persons outside the prison); Neumeyer v. Beard, 421 F.3d 210, 214 (3d Cir. 2005) (holding the special needs doctrine allows prison officials to conduct suspicionless searches of visitors vehicles).

Courts have long recognized the special security concerns of prisons and neither prisoners nor the private citizen entering the institution for visitation have an unfettered right to visit. Spears, 71 F.3d at 629-30. Plaintiff's conclusory allegation that the search of her personal property was outside the normal scope of search customary of visitors fails to allege any facts to state a plausible claim that the search of her property was more than a routine search that does not require a warrant or reasonable suspicion. Iqbal, 129 S. Ct. at 1949.

### 2. **Arrest**

Plaintiff also claims that Defendants placed her under arrest without a warrant when they detained her during her visit to the prison. The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment applies to all seizures, even those brief detentions that are short of traditional arrest. Brown v. Texas, 443 U.S. 47, 50 (1979); United States v. Johnson, 581 F.3d 994, 999 (9th Cir. 2009). A seizure does not occur simply because a law enforcement officer approaches an individual and asks questions. As long as a reasonable person would feel free to leave and go about their business the encounter is considered consensual, no reasonable suspicion is required, and the Fourth Amendment is not violated. Florida v. Bostick, 501 U.S. 429, 434 (1991).

Additionally, an individual's voluntary choices may give rise to a limitation of freedom that does not equate to a seizure by law enforcement. See I.N.S. v. Delgado, 466 U.S. 210, 212 (1984) (holding I.N.S. surveys of factory workers did not amount to seizures of the entire workforce and questioning of individual workers did not amount to detention or seizure under the Fourth Amendment); United States. v. Guzman-Padilla, 573 F.3d 865, 877 (9th Cir. 2009) (under the border search doctrine, searches conducted at the border require no suspicion as long as they are not "unreasonably intrusive"); United States v. Aukai, 497 F.3d 955, 960 (9th Cir. 2007)

(constitutionality of airline search does not depend on consent); United States v. Edwards, 498 F.2d 496, 500 (2d Cir. 1974) (holding airline search does not violate the Fourth Amendment as long as it is reasonable). As discussed above, visitors can be subject to some searches when entering a prison, absent any suspicion, due to the security concerns. Spear, 71 F.3d at 629-30.

In determining if an encounter constitutes a seizure under the Fourth Amendment "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. Bostick, 501 U.S. at 439. The fact that this incident occurred while Plaintiff was visiting a prison influences the inquiry into whether a reasonable person would believe she was under arrest. United States v. Guzman-Padilla, 573 F.3d 865, 883 (9th Cir. 2009). "Factors relevant to whether an accused is in custody include '(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.'" United States v. Redlightning, 624 F.3d 1090, 1103 (9th Cir. 2010) (citing United States v. Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001)).

Plaintiff voluntarily came to the prison and as she was waiting to complete the visitor intake process Defendant Couch approached her with two police officers. Plaintiff was told to come with Defendant Couch. While Plaintiff states that she was ordered to "come with me," other than the presence of the two additional officers, nothing in the facts as alleged indicate that this was more than a request that she go with the officer so that the intake process could be completed.

Plaintiff was taken into an office where Defendant Couch was behind the desk while the two officers stood. Plaintiff states that she was asked some questions and told that her property was going to be taken for a "trace search" to be done. Although Plaintiff alleges that Defendant Couch assumed that she was transporting contraband into the prison, no facts are stated to indicate that she was confronted with any evidence of guilt. The questioning and inspection of Plaintiff's belongings appear, at the most to be investigatory, and would be reasonable in the context of preventing contraband from entering the institution. While Plaintiff alleges that Defendant Couch informed her

that a search warrant was on the way and she agreed to sign a consent form, no strip search was conducted.

When Plaintiff was taken to another room, she was told to stand in the center of the room and not to attempt to discard any contraband. While Plaintiff states that the two officers were left to "guard her," she was not physically restrained in any manner and no force was used at any time during visit to the institution. Plaintiff complains that she was informed that force would be used if she attempted to discard any contraband, however it does not seem unreasonable to inform a visitor to a prison that if an officer sees the person attempt to discard contraband they will be prevented from doing so. This statement would not indicate to a reasonable person that they were under arrest, but that they were not to attempt to discard any contraband. Nor was any pressure applied to detain Plaintiff. After approximately fifteen minutes Defendant Couch returned. Once Defendant Couch returned, Plaintiff told him she wanted an attorney and she was informed that she was free to go.

Plaintiff states that due to a prior incident she believed that she was under arrest. However, the reasonable person standard does not take into account the state of mind of the individual. Michigan v. Chesternut, 486 U.S. 567, 574 (1988). A reasonable person entering a prison would expect that they and their property could be subject to search prior to having contact with an inmate to ensure that they did not have any contraband. Considering the totality of the circumstances that Plaintiff was subject to a reasonable person would believe that she was detained and would be free to leave once Defendant Couch returned with her property. Johnson, 581 F.3d at 999. Plaintiff was not under arrest.

To determine the constitutionality of a seizure that is short of traditional arrest, the court weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Brown v. Texas, 443 U.S. 47, 50-51 (1979). The importance of maintaining institutional security and preventing contraband from being introduced into the prison advances not only the legitimate goals of prison officials, but the public's strong interest in maintaining the security of prisons. Prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow prison

officials to achieve legitimate correctional goals and maintain institutional security. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Bell, 441 U.S. at 546-47. This legitimate goal of maintaining institutional security has lead courts to find that visitors can be subjected to some searches as a condition of visitation, absent any suspicion. Spear, 71 F.3d at 629-30. The screening of visitors entering a prison to ensure that they do not bring in drugs, weapons, or other contraband advances the public interest in protecting both the inmates and prison officials.

While the Court finds no published Ninth Circuit decision dealing with the length of detention of a prison visitor, United States v. Aukai, 497 F.3d 955, discusses the detention of a passenger at an airport. Given that both airport screening and prison screening have safety concerns, the Court finds this case instructive. In Aukai, defendant arrived at the airport without his identification. Due to the lack of identification he was required to undergo a manual wand screening, even though he had passed through the metal detector without any problems. During the manual screening the wand alarm was triggered, and defendant was found to be in possession of methamphetamine. Aukai, 497 F.3d at 957-58. Defendant appealed the denial of his motion to suppress. Id. at 958. The Aukai court found that the constitutionality of the airport search was not dependent upon consent, and that where the search is otherwise reasonable and pursuant to statutory authority all that is required is the passenger's attempt to enter the secured area of the airport. Id. at 961. The detention of defendant, which was approximately eighteen minutes, was reasonable since it was not prolonged beyond the time reasonably required to rule out the presence of weapons or explosives. Id. at 963.

Since Plaintiff was detained for a relatively short period of time to be asked some questions and have her belongings scanned or searched to ensure that she did not have any contraband, the detention was reasonable and does not violate the Fourth Amendment prohibition against unreasonable seizures. See Aukai, 497 F.3d at 963.

### 3. Qualified Immunity

Additionally, even if the Court had found that there was a constitutional violation, Defendants would be entitled to qualified immunity. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, No. 08-15957, 2010 WL 3547637, at *2 (9th Cir. Sept. 14, 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).

Plaintiff alleges that she was detained in violation of the Fourth Amendment. The right Plaintiff alleges has been "violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Dunn, 2010 WL 3547637, at *4 (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). In this instance the issue is whether an officer would know that detaining Plaintiff for a period of more than fifteen minutes to question her and conduct a trace search of her property upon her entry into the prison would have violated her right to be free from unreasonable search and seizure. Based upon the discussion above, it is clearly established that visitors can be subjected to some type of screening prior to be admitted to visit at the prison. Bell, 441 U.S. at 559; Spear, 71 F.3d at 629-30; Wood, 89 F.3d at 928; see also Ybarra, 520 F.Supp. 1000. However, while the state of the law is clear as to the extent of the search allowable, no strip search without reasonable suspicion, Spear, 71 F.3d at 630, the allowable length of the detention is not clearly established. See United States v. Sharpe, 470 U.S. 675, 688 (1985) (twenty minute detention not unreasonable where officers pursued investigation in diligent and reasonable manner); Aukai, 497 F.3d at 963 (fifteen minute detention by airport security not unreasonable); Gallegos v. City of Los Angeles, 308 F.3d 987, 992 (9th Cir. 2002) (forty five minute to one hour detention not unreasonable where it was to determine if officers had the right person and detainee was promptly

vindicated); United States v. Massie, 65 F.3d 843, 849 (10th Cir. 1995) (detention of eight to eleven minutes did not exceed confines of routine border stop).

The state of the law would not give Defendant Couch notice that a detention of more than fifteen minutes would violate Plaintiff's constitutional rights and, therefore, he would be entitled to qualified immunity.

**B.     Due Process**

Plaintiff alleges violations of her due process rights under Title 15.  Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)).  There is no independent cause of action for a violation of Title 15 regulations. See Davis v. Kissinger, No. CIV S-04-0878 GEB DAD P, 2009 WL 256574, *12 n.4 (E.D.Cal. Feb. 3, 2009).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996).  Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)).

The Due Process Clause protects against the deprivation of liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought. Id.  While Plaintiff does have a liberty interest in not being illegally detained, as discussed above, her detention did not violate the Fourth Amendment and she has failed to state a cognizable claim.

**C.     Equal Protection**

The Equal Protection Clause requires that all persons who are similarly situated should be treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  An equal protection claim may be established by showing

9

that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiff has failed show membership in a protected group or that similarly situated individuals were treated differently. Additionally, there is no allegation that she was detained or her property was searched with a discriminatory purpose and she has failed to state a cognizable claim.

### D. Failure to Train

Plaintiff brings this action against Defendants Clark and Tilton for failure to train. In order to state a claim, the failure to train must be the moving force behind the constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989). Since Plaintiff has not shown that any of her federal rights were violated, she has failed to state a cognizable claim.

### E. State Law Claims

Since Plaintiff has failed to allege a cognizable claim for a violation of her federal rights, the Court declines to address her supplemental state law claims.

## IV. Conclusion and Recommendation

The Court finds that Plaintiff's complaint fails to state any claims upon which relief can be granted under § 1983 against any named defendant. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" In addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted). However, in this action Plaintiff has been granted an opportunity to amend the complaint, with guidance by the Court. Plaintiff has now filed four[1] complaints without alleging facts against any of the defendants sufficient to state a claim under § 1983. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C.

---

[1] Plaintiff filed complaints in 1:08-cv-00069-LJO-SMS prior to the actions being severed.

§ 1915(e)(2)(B)(ii); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that this action be dismissed in its entirety, with prejudice, for failure to state a claim upon which relief can be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   March 15, 2011

UNITED STATES MAGISTRATE JUDGE